# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A | § | CIVIL ACTION 6:20-cv-00537-ADA |
| BRAZOS LICENSING AND | § | CIVIL ACTION 6:20-cv-00539-ADA |
| DEVELOPMENT, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| HUAWEI TECHNOLOGIES USA | § | |
| INC. ET AL., | § | |
| *Defendants.* | § | |

## PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.   Legal Standards ........................................................................................................... 1

II.  U.S. Patent No. 7,860,512 (Case No. 6:20-cv-00537-ADA) .................................... 1

    1.   "capacity" ............................................................................................................1

III. U.S. Patent No. 8,200,224 (Case No. 6:20-cv-00539-ADA) .................................... 3

    1.   "selecting a first candidate base station using said evaluation of said signal quality from said first measurement report" (claim 1) ......................................3

    2.   "executable program means for causing a base station to perform the method when the program is run on the base station" (claim 15) ..................................4

# TABLE OF AUTHORITIES

**Cases**

*01 Communique Laboratory, Inc. v. LogMeIn, Inc.*,
  687 F.3d 1292 (Fed. Cir. 2012) .................................................................................................. 4

*Augme Techs., Inc. v. Yahoo! Inc.*,
  755 F.3d 1326 (Fed. Cir. 2014) .................................................................................................. 3

*CloudofChange, LLC v. NCR Corp.*,
  No. 6-19-CV-00513-ADA, 2020 WL 4004810 (W.D. Tex. July 15, 2020) .............................. 1

*Collaborative Agreements, LLC v. Adobe Systems Inc.*,
  Case No. A–14–CV–356–LY, 2015 WL 2250391 (W.D. Tex. 2015) ........................................ 6

*Comark Comm'ns, Inc. v. Harris Corp.*,
  156 F.3d 1182 (Fed. Cir. 1998) .................................................................................................. 2

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*,
  382 F. Supp. 3d 586 (E.D. Tex. 2019) ....................................................................................... 5

Phillips v. AWH Corp.,
  415 F.3d 1303 (Fed. Cir. 2005) .................................................................................................. 2

*SecurityProfiling, LLC v. Trend Micro America, Inc.*,
  No. 3:17-CV-1484-N, 2018 WL 4585279 (N.D. Tex. Sept. 25, 2018) ...................................... 6

*SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*,
  820 F.3d 419 (Fed. Cir. 2016) .................................................................................................... 2

*Syncpoint Imaging, LLC v. Nintendo of America Inc.*,
  No. 215CV00247JRGRSP, 2016 WL 55118 (E.D. Tex. Jan. 5, 2016) ...................................... 6

*Unwired Planet, LLC v. Apple Inc.*,
  829 F.3d 1353 (Fed. Cir. 2016) .................................................................................................. 2

*Williamson v. Citrix Online, LLC*,
  792 F.3d 1339 (Fed. Cir. 2015) .................................................................................................. 4

*Zeroclick, LLC v. Apple Inc.*,
  891 F.3d 1003 (Fed. Cir. 2018) .................................................................................................. 5

Plaintiff WSOU Investments, LLC d/b/a Brazos License and Development ("WSOU") submits the following opening claim construction brief.

## I. Legal Standards

This Court recently explained that "[t]he 'only two exceptions to [the] general rule' that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution." *CloudofChange, LLC v. NCR Corp.*, No. 6-19-CV-00513-ADA, 2020 WL 4004810, at *2 (W.D. Tex. July 15, 2020) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "To act as his/her own lexicographer, the patentee must 'clearly set forth a definition of the disputed claim term,' and 'clearly express an intent to define the term.'" *Id.* (quoting *Thorner,* 669 F.3d at 1365). And "[t]o disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent 'a clear disavowal of claim scope.'" *Id.* (quoting *Thorner,* 669 F.3d at at 1366). "Accordingly, when 'an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable.'" *Id.* (quoting *3MInnovative Props. Co.* v. *Tredegar Corp.,* 725 F.3d 1315, 1326 (Fed. Cir. 2013)).

## II. U.S. Patent No. 7,860,512 (Case No. 6:20-cv-00537-ADA)

### 1. "capacity"

| WSOU's Position | Huawei's Position |
|---|---|
| Plain and ordinary meaning. | "load" |

The "capacity" term requires no construction here. The word "capacity" appears in the '512 patent nearly two-hundred times (including in virtually every claim). The word choice of the patentee should control. Huawei violates fundamental claim construction principles in arguing that every instance of "capacity" recited in the claims should be rewritten as "load."

First, Huawei violates the principle that "[t]here is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims." *Comark Comm'ns, Inc.*

*v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips* v. *AWH Corp.,* 415 F.3d 1303, 1314 (Fed. Cir. 2005) *(en banc)* c*ert. denied*, 546 U.S. 1170 (2006); ("Differences among claims can also be a useful guide in understanding the meaning of particular claim terms.") (citation omitted); *SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 431 (Fed. Cir. 2016) (reversing district court because the choice to use "data channel in claim 1 rather than 'data feed,' notwithstanding use of the latter elsewhere in the patent, lends support to the conclusion that 'data feed' does not carry the same meaning as 'data channel.'"); *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1358–59 (Fed. Cir. 2016) (finding error in construing "voice input" to be limited to a voice input transmitted over a voice channel, but rather was broad enough to cover a voice input transmitted over a voice or data channel, and noting that in other claims the patentee had expressly claimed the use of a voice channel showing that had the patentee intended to limit "voice input" to transmission over a voice channel it could have done so with other language but did not).

Applying the above authority, a comparison of claim 1 and claim 3 depending therefrom reveals that "capacity" cannot properly be interpreted as being interchangeable with "load" in terms of either meaning or scope. Claim 1 recites the "capacity" term nine times in various contexts, and in none of those instances is "capacity" expressly limited to "load." By contrast, claim 3 recites "[t]he method of claim 1, wherein *the radio capacity information* indicates at least one of a current cell *load* and a maximum radio *capacity* of the radio cell, the current cell *load* and available radio capacity of the radio cell, a transport *load* of the transport network, the transport *load* of a connection from one base station of the radio network to another base station of the radio network." Claim 3 thus introduces certain alternatives that are each expressly tethered to—*and further limit*—the "radio capacity information" term. One of those alternatives refers to "the current cell *load* and available radio *capacity* of the radio cell." '512 patent, 11:52−58 (claim 3) (emphasis added). A comparison of claims 1 and 3, therefore, reveals that the terms "capacity" and "load" are not interchangeable. Rather, the patentee indicated in the claim language itself those instances when "radio capacity information" is expressly limited in terms of "load" (*e.g.*,

"current cell *load*" of claim 3).  An analogous claim differentiation is also shown by a comparison of independent claim 11 and claim 13 depending therefrom.  Under the circumstances, where different words or phrases are used in separate claims, it would be erroneous here to interpret "capacity" and "load" to carry the same meaning and scope.

As a corollary principle of claim construction, a difference in meaning is also presumed when different words or phrases are used in the *same* claim.  *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1333 (Fed. Cir. 2014) ("[D]ifferent claim terms are presumed to have different meanings.") (quoting *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008)).  As explained above, claim 3 recites an alternative further limiting the "radio capacity information" term with *both* "current cell load" *and* "available radio capacity" requirements.  *Id*., 11:53−54.  The recitation of both "capacity" and "load" requirements in the same limitation of the same claim only further underscores the presumption that "capacity" and "load" are not interchangeable in meaning and scope.

The specification also underscores the error in Huawei's construction.  For example, the specification states "[t]ypically it comprises parameters expressing information on the maximum available capacity of the cell and current load information expressed, for example, as a percentage of the maximum capacity.  Alternatively, the radio capacity information may comprise a parameter reflecting the available radio capacity." *Id*., 10:8−11.  While the former embodiment tracks part of claim 3, the latter expresses an alternative where the "radio capacity information" includes a parameter that reflects "available radio *capacity*," though not necessarily the current *load*.

### III.  U.S. Patent No. 8,200,224 (Case No. 6:20-cv-00539-ADA)

**1. "selecting a first candidate base station using said evaluation of said signal quality from said first measurement report" (claim 1)**

| WSOU's Position | Huawei's Position |
|---|---|
| Plain and ordinary meaning. | "selecting a single candidate base station using said evaluation of said signal quality from said first measurement report" |

3

Huawei does not purport to offer any definition for any term recited in the disputed phrase, "selecting a first candidate base station …," apart from proposing to replace "first" with "single." Notably, Huawei proposes replacing "first" with "single" for only one of the two instances were "first" is recited in the disputed phrase (as emphasized by the highlighting above). The dispute over this phrase, therefore, is only whether "a first candidate base station" should be restricted to "a single candidate base station" *only*.

The clam language invokes the general rule that the article "a" or "an" means "one or more" in the absence of intrinsic evidence necessitating a contrary result. *See 01 Communique Laboratory, Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012) (citation omitted). "The exceptions to this rule are extremely limited: a patentee must evince a clear intent to limit 'a' or 'an' to 'one.'" *Id*. (quoting *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008)). Here, there is no rare and exceptional fact that compels departing from the general rule.

Huawei also has taken the inconsistent position that "a *first* candidate base station" should be rewritten as "a *single* candidate base station," yet "*first* measurement report" (recited in the same disputed phrase) somehow does not invoke the same "single" construction. By acknowledging "first" should remain unchanged when it qualifies "measurement report," Huawei has tacitly admitted that there is likewise no need to modify the "first" qualifier modifying "candidate base station."

For each one of the foregoing independent reasons, Huawei's narrowing claim construction should be rejected.

### 2. "executable program means for causing a base station to perform the method when the program is run on the base station" (claim 15)

| 3.  WSOU's Position | Huawei's Position |
|---|---|
| **Plain and ordinary meaning; and does <u>not</u> invoke 35 U.S.C. § 112, ¶6.**<br>**If the court finds the term invokes § 112, ¶6, however, then:** | Subject to 35 U.S.C. § 112, ¶6.<br>**Function**: causing a base station to perform the method when the program is run on the base station. |

4

| | |
|---|---|
| **Function:** causing a base station to perform the method of claim 1.<br><br>**Structure:** executable program code configured when executed to cause the base station to perform the method of claim 1; the example flowchart shown in Fig. 1 and its accompanying written description; example signaling described with reference to Figs. 2−4; the example selecting process described with reference to Fig. 5; the base station described with reference to Fig. 6; and equivalents of any of the foregoing. | **Structure:** the Fig. 1 flowchart 100 of a handover method in a base station of a mobile communication system, and equivalents thereof. |

The phrase "executable program means for causing a base station to perform the method when the program is run on the base station" recites sufficient structure to rebut the presumption that use of the word "means" invokes 35 U.S.C. § 112, ¶ 6. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). It is significant here that the disputed phrase does not merely recite "means for" followed by purely functional language. Rather, the "means for" is itself modified by the structural requirement "executable program." In addition, the "executable program" is *both* (1) structurally tied to the "base station" upon which "the program is run" *and* (2) structurally limited in that it must "caus[e] the base station to perform the method" of claim 1, *in its entirety*. When viewing claim 15 as a whole, therefore, the context in which the "means for" term is recited provides sufficient structure to avoid application of 112, ¶ 6. *See Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, 382 F. Supp. 3d 586, 643 (E.D. Tex. 2019), *reconsideration denied*, No. 6:18-CV-30-JDK, 2019 WL 4935280 (E.D. Tex. Aug. 23, 2019) ("[W]hether recitation of 'instruction' performing a function is governed by § 112, ¶ 6 depends on whether the stated objectives and operation of the code connote sufficiently definite structure.") (citing *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319-21 (Fed. Cir. 2004) (finding that "circuit [for performing a function]" was sufficiently definite structure because the claim recited the "objectives and operations" of the circuit)).

That the surrounding context of claim 15 connotes structure appears to be undisputed. In arguing that the term invokes § 112, ¶ 6, Huawei argues that the flowchart 100 of Figure 1 discloses exemplary *structure* corresponding to the claim language. The flowchart of Figure 1 discloses a series of steps (100−108), each closely tracking a respective step of the method of claim 1. If Figure 1 discloses structure corresponding to the disputed term, as Huawei contends, then sufficient structure is recited in the claim language itself. This is because the claimed "executable program" is recited in the limiting context of, "causing a base station *to perform the method [of claim 1]* when the program is run on the base station." '224 patent, 10:58−61 (emphasis added).

Even if one were to set aside the structural limitations provided in the surrounding context, the recitation of "executable program" is itself analogous to terms which have been found to recite sufficient structure to avoid means-plus-function construction under § 112, ¶6. *See*, *e.g.*, *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1009 (Fed. Cir. 2018) ("The district court thus erred by effectively treating 'program' and 'user interface code' as nonce words and concluding in turn that the claims recited means-plus-function limitations."); *Collaborative Agreements, LLC v. Adobe Systems Inc.*, Case No. A–14–CV–356–LY, 2015 WL 2250391, *12–*14 (W.D. Tex. 2015), *denying reconsideration after transfer*, Case No. 15-cv-03853-EMC, 2015 WL 7753293, *4–*8 (N.D. Cal. Dec. 2, 2015) (finding "code-segment" had sufficient structure to avoid being treated as a means-plus-function limitation); *SecurityProfiling, LLC v. Trend Micro America, Inc.*, No. 3:17-CV-1484-N, 2018 WL 4585279, *2−*3 (N.D. Tex. Sept. 25, 2018) (term "code" was not a "nonce" term and therefore would not be treated as a means-plus-function limitation); *Syncpoint Imaging, LLC v. Nintendo of America Inc.*, No. 215CV00247JRGRSP, 2016 WL 55118, *23−*24 (E.D. Tex. Jan. 5, 2016) (claim limitations reciting "instructions for detecting" and "instructions for processing" were not means-plus-function limitations because the term "instruction" connoted sufficient structure of computer program code).

If the Court is inclined to find that the disputed phrase of claim 15 invokes 35 U.S.C. § 112, ¶ 6, notwithstanding the ample authority above instructing otherwise, then the corresponding structure should be interpreted as at least including: executable program code configured when

6

executed to cause the base station to perform the method of claim 1 (as recited in the claim language itself); the example flowchart shown in Fig. 1 of the '224 patent and its accompanying written description; example signaling described with reference to Figs. 2−4; the example selecting process described with reference to Fig. 5; the base station described with reference to Fig. 6; and equivalents of any of the foregoing. This list of exemplary structure encompasses various embodiments and, consequently, it is not offered as a comprehensive set of requirements which must all be met if the Court were to apply a means-plus-function construction. It would be improper, for example, to conclude that the additional structural detail provided in Fig. 5 and its accompanying written description is necessarily required for *all* embodiments. Rather, as the '224 patent itself confirms, Fig. 5 provides further detail that may be applicable when executing step 107 of Figure 1, according to certain example embodiments. '224 patent, 7:15−16.

Dated: February 5, 2021                                          Respectfully submitted,

                                                    By:   */s/ Ryan S. Loveless*
                                                          James L. Etheridge
                                                          Texas Bar No. 24059147
                                                          Ryan S. Loveless
                                                          Texas Bar No. 24036997
                                                          Brett A. Mangrum
                                                          Texas Bar No. 24065671
                                                          Travis L. Richins
                                                          Texas Bar No. 24061296
                                                          Jeff Huang
                                                          Etheridge Law Group, PLLC
                                                          2600 E. Southlake Blvd., Suite 120 / 324
                                                          Southlake, TX 76092
                                                          Tel.: (817) 470-7249
                                                          Fax: (817) 887-5950
                                                          Jim@EtheridgeLaw.com
                                                          Ryan@EtheridgeLaw.com
                                                          Brett@EtheridgeLaw.com
                                                          Travis@EtheridgeLaw.com
                                                          Jeff@EtheridgeLaw.com

                                                          Mark D. Siegmund
                                                          State Bar No. 24117055
                                                          mark@waltfairpllc.com


Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff WSOU Investments, LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on this the 30th day of February 5, 2021.

*/s/ Ryan S. Loveless*
Ryan S. Loveless