**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,** | § § § § | **CIVIL ACTION 6:20-cv-00537-ADA** <br> **CIVIL ACTION 6:20-cv-00539-ADA** |
| *Plaintiff*, | § § | |
| v. | § § | |
| **HUAWEI TECHNOLOGIES USA INC. ET AL.,** | § § § | |
| *Defendants.* | § | |

**PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF**

## Table of Contents

**I. U.S. Patent No. 7,860,512 (Case No. 6:20-cv-00537-ADA)** .................................................. 1

    1. "capacity" ...........................................................................................................................1

**II. U.S. Patent No. 8,200,224 (Case No. 6:20-cv-00539-ADA)** .................................................. 3

    1. "selecting a first candidate base station using said evaluation of said signal quality from said first measurement report" (claim 1) ......................................................3

    2. "executable program means for causing a base station to perform the method when the program is run on the base station" (claim 15) ..................................................4

## Table of Authorities

**Cases**

*ACTV, INc. v. Walt Disney Co.*,
  346 F.3d 1082 (Fed. Cir. 2003) .................................................................................................... 4

*AGIS Software Dev., LLC v. Huawei Device USA Inc.*,
  No. 2:17-CV-513-JRG, 2018 WL 4908169 (E.D. Tex. Oct. 10, 2018) ....................................... 5

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
  299 F.3d 1336 (Fed. Cir. 2002) .................................................................................................... 2

*Cole v. Kimberly-Clark Corp.*,
  102 F.3d 524 (Fed. Cir. 1996) ...................................................................................................... 5

*Digital Biometrics, Inc. v. Identix, Inc.*,
  149 F.3d 1335 (Fed. Cir. 1998) .................................................................................................... 3

*In re Rambus Inc.*,
  694 F.3d 42 (Fed. Cir. 2012) ........................................................................................................ 4

*Inline Plastics Corp. v. EasyPak, LLC*,
  799 F.3d 1364 (Fed. Cir. 2015) .................................................................................................... 4

*Ormco Corp. v. Align Tech., Inc.*,
  498 F.3d 1307 (Fed. Cir. 2007) .................................................................................................... 2

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) .................................................................................................... 4

*Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*,
  824 F.3d 999 (Fed. Cir. 2016) ...................................................................................................... 2

I. **U.S. Patent No. 7,860,512 (Case No. 6:20-cv-00537-ADA)**

   1. **"capacity"**

| WSOU's Position | Huawei's Position |
|---|---|
| Plain and ordinary meaning. | "load" |

Huawei fails to meet its burden to rebut the multiple legal presumptions—*arising from the claim language itself*—against construing the disputed "capacity" term as being interchangeable with the word "load" in terms of meaning and scope. Dkt. 43, 1-3. WSOU had observed, for example, that both claims 3 and 13 expressly differentiate "capacity" from "load" by separately referring to both terms in the same clauses (*e.g.*, "at least one of a current cell *load* and a maximum radio *capacity* . . . , the current cell *load* and an available radio *capacity*"). WSOU had further observed that claim 1, from which claim 3 depends, "recites the 'capacity' term nine times in various contexts, and in none of those instances is 'capacity' expressly limited to 'load.'" *Id.*, 2. This independently gives rise to a presumption against Huawei's construction. *Id.*

Huawei argues it has rebutted each of the *multiple* presumptions arising under the doctrine of claim differentiation merely by its conclusory assertion that the specification uses "capacity" and "load" interchangeably. Huawei mischaracterizes the specification, and the presumptions therefore stand unrebutted. For example, the specification expressly differentiates "capacity" and "load" by separately referring to both terms in the *same* clause of the *same* sentence—just like the claim language. '512 patent at 10:3-4 (separately referring to both "the transport capacity and load situations"). The specification further differentiates "capacity" from "load" by stating "[t]he transport capacity can be indicated as the transport load." *Id.* at 8:57-58. Use of the word "can" in this context, as opposed to *must*, independently refutes the untethered interpretation that "capacity" and "load" must be considered interchangeable. WSOU's opening brief also identified other exemplary disclosures (likewise differentiating "capacity" and "load") that closely track claim language recited in claims 3 and 11, thereby further confirming the explicit differentiation in the claims should be given meaningful effect. Dkt. 43, 3 (citing '512 patent at 10:8-11). Huawei overlooks these example instances expressly refuting its interchangeability interpretation.

1

The presumptions are not rebutted by Huawei's legally and factually flawed argument that *its* preferred word choice should control over that of the patentee allegedly because "load" (as opposed to "capacity") is "the crux of the alleged invention of the '512 Patent." Dkt. 45, 2. Because "it is well settled that there is no legally recognizable or protected essential element, gist, or heart of the invention," a party cannot substitute its word choice over that of the patentee merely by alleging (incorrectly) the proposed substitution would better capture the *crux* of the invention. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1345 (Fed. Cir. 2002); *see also Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1322 (Fed. Cir. 2007) ("This court . . . has rejected a claim construction process based on the 'essence' of an invention."); *accord*, *Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*, 824 F.3d 999, 1009-10 (Fed. Cir. 2016) (J. Stark, dissent).

Huawei misunderstands the doctrine of claim differentiation by suggesting its proposed construction does not "trigger" the doctrine. Dkt. 45, 4. The presumptions here *automatically* arise under the doctrine *because of what is recited in the claims*, independent of the parties' respective positions. Dkt. 43, 1-3 (discussing the doctrine). Because the presumptions arise under the doctrine as an operation of law due to the claim language itself, the burden lies with Huawei to rebut those presumptions. This Huawei failed to do.

Huawei nevertheless attempts to argue the doctrine does not arise by the *acknowledged* differentiation of claims 1 and 3. Dkt. 43, 3-4. Huawei argues that if the Court were to substitute "load" for every instance of "capacity" in claim 3, claim 3 would still be differentiated from claim 1. Dkt. 45, 4. Huawei misses the point. As explained in WSOU's opening brief, "[c]laim 1 recites the 'capacity' term nine times in various contexts, and in none of those instances is 'capacity' expressly limited to 'load.'" Dkt. 43, 2. Claim 3, by contrast, expressly limits the "radio capacity information" introduced in claim 1 by adding limitations directed to "cell *load*" and transport *load*." *Id*. This invokes the doctrine as to the "radio capacity term," independent of any construction (if any) that is offered for "capacity." Similarly, the doctrine is automatically invoked internally within claim 3 because multiple clauses recite *both* "capacity" *and* "load" separately. *Id*., 2-3. The very claim language that *invokes* the presumption cannot also rationally *rebut* it.

2

## II. U.S. Patent No. 8,200,224 (Case No. 6:20-cv-00539-ADA)

### 1. "selecting a first candidate base station using said evaluation of said signal quality from said first measurement report" (claim 1)

| WSOU's Position | Huawei's Position |
|---|---|
| Plain and ordinary meaning. | "selecting a single candidate base station using said evaluation of said signal quality from said first measurement report" |

Huawei failed to establish that "the patentee . . . evince[d] a clear intent" to limit "a *first*" to "a *single*," though only in the context of "a first candidate base station." Dkt. 43, 4 (citation omitted). Accordingly, there is no "extremely rare" exception to the general rule here. *Id*.

It remains undisputed that the term "a *first* measurement report" (also recited in claim 1) requires no construction and should not be construed to mean "a *single* measurement report." *Id*. Indeed, Huawei's proposed claim construction simply restates "first measurement report" without any modification. Because "the same word appearing in the same claim should be interpreted consistently," "first" cannot mean "first" in one instance and "single" in another. *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1345 (Fed. Cir. 1998). Thus, Huawei's inconsistent interpretation of "first" is independently fatal to its construction. Dkt. 45, 7.

Huawei incorrectly argues that use of both the singular and plural form of "base station(s)" in claim 1 supports Huawei's construction. *Id*. However, the general rule is that the article "a" means "one or more," regardless of whether a plurality is expressly recited. Dkt. 43, 4 (citation omitted). Moreover, claim 1 recites the *plural* form of base station even when referring to scope that expressly encompasses the *singular*. For example, claim 1 recites "said first measurement report containing an evaluation of signal quality from **at least one** candidate base station of said plurality of base stations." '224 patent at 9:8-11. Here, the "candidate base station" clearly encompasses at least the singular. Elsewhere, claim 1 refers to this same limitation by reciting "selecting a set of candidate base stations including at least some of **said candidate base stations** identified in said first measurement report." *Id.* at 9:17-19. Thus, recitation of the plural or singular form of "base station(s)" in claim 1 does not evince a clear intent to so limit the term.

Huawei has not supported its construction by pointing to instances in the specification

3

where verbs are used in the singular form (as opposed to the plural) following descriptions of "a first candidate base station."  Dkt. 45, 7-8.  That the specification applies correct *grammar* following recitation of "a first candidate base station" does not somehow give rise to an "extremely rare" exception by evincing a clear intent to limit "a *first* candidate base station" to "a *single* candidate base station" only.  Huawei also overlooks a significant counterexample, where the specification uses the couplet "single first" in referring to a "a single first handover acknowledgement message."  '224 patent, 7:1.  The pairing of "single first" in the specification confirms that when "first" is intended to refer to a "single" only, the patentee said so.

Huawei has failed to meet the exacting burden to prove prosecution history disclaimer.  Dkt. 45, 8.  As Huawei concedes, the cited portion of the prosecution concerns a reference "raised by the examiner with regards to the 'second handover' aspect of then pending claim 1"—i.e., ***not*** the claim language in question.  *Id*.  Prosecution disclaimer does not arise from statements overcoming a rejection on bases *other than* the limitation disputed at *Markman*.  *See*, *e.g.*, *Inline Plastics Corp. v. EasyPak, LLC*, 799 F.3d 1364, 1366 (Fed. Cir. 2015); *In re Rambus Inc.*, 694 F.3d 42, 48, (Fed. Cir. 2012); *ACTV, INc. v. Walt Disney Co.*, 346 F.3d 1082, 1092 (Fed. Cir. 2003).  Moreover, the Federal Circuit has recognized (including in *Phillips*) that due to the evolving nature of claims during patent prosecution, the prosecution history may have limited usefulness.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (*en banc*).

2. **"executable program means for causing a base station to perform the method when the program is run on the base station" (claim 15)**

| WSOU's Position | Huawei's Position |
|---|---|
| Plain and ordinary meaning and does **not** invoke 35 U.S.C. § 112, ¶6.<br><br>If the court finds the term invokes § 112, ¶6, however, then:<br><br>**Function:** executable program causing a base station to perform the method of claim 1 when the program is run on the base station. | Subject to 35 U.S.C. § 112, ¶6.<br><br>**Function**: causing a base station to perform the method when the program is run on the base station.<br><br>**Structure:** the Fig. 1 flowchart 100 of a handover method in a base station of a mobile communication system, and equivalents thereof. |

4

| | |
|---|---|
| **Structure:** executable program causing a base station to perform the method of flowchart 100; and equivalents thereof. | |

Huawei fails to dispute a fundamental reason why its proposed construction fails at the first stage of the analysis—i.e., on the issue of whether the term invokes § 112, ¶ 6. Dkt. 43, 5-7. The Federal Circuit has articulated the test in a negative as follows: "[t]o invoke [35 U.S.C § 112, ¶ 6] the alleged means-plus-function claim element ***must not*** recite definite structure which performs the described function." *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996) (emphasis added); *see also AGIS Software Dev., LLC v. Huawei Device USA Inc.*, No. 2:17-CV-513-JRG, 2018 WL 4908169, at *18 (E.D. Tex. Oct. 10, 2018) (collecting cases, including *Cole*).

Huawei has essentially conceded that claim 15 recites definite corresponding structure. Huawei's identification of alleged functional and structural language (as reproduced in the table above) significantly overlap. Indeed, the alleged *functional language* recites significantly more structure than the alleged *structural language*. This is because the method of claim 1 (which Huawei identifies as functional language) recites more detail than flowchart 100 of Figure 1 (which Huawei identifies as corresponding structure). Huawei's proposed means-plus-function construction arguably *expands* claim scope by proposing to simplify the structural method requirement to the more generalized representation of flowchart 100. In view of what Huawei identifies as corresponding structure, it cannot reasonably argue the claim language itself does not recite *any* corresponding structure. It follows that Huawei's own admissions defeat an interpretation that the claim language invokes § 112, ¶ 6.

For the sake of brevity, and due to page-limit constraints, WSOU defers to its other relevant points raised in its opening brief. Dkt. 43, 5-7.

In the unlikely event the Court finds the disputed term invokes means-plus-function construction under § 112, ¶ 6, WSOU has simplified its construction in the table above, if only to underscore that the claim language itself recites sufficiently definite structure and that there is no rational basis to bifurcate structure and function here (under a means-plus-function construction).

Dated: March 19, 2021           Respectfully submitted,

          By:    */s/ Ryan S. Loveless*
                James L. Etheridge
                Texas Bar No. 24059147
                Ryan S. Loveless
                Texas Bar No. 24036997
                Brett A. Mangrum
                Texas Bar No. 24065671
                Travis L. Richins
                Texas Bar No. 24061296
                Jeff Huang
                Etheridge Law Group, PLLC
                2600 E. Southlake Blvd., Suite 120 / 324
                Southlake, TX 76092
                Tel.: (817) 470-7249
                Fax: (817) 887-5950
                Jim@EtheridgeLaw.com
                Ryan@EtheridgeLaw.com
                Brett@EtheridgeLaw.com
                Travis@EtheridgeLaw.com
                Jeff@EtheridgeLaw.com

                Mark D. Siegmund
                State Bar No. 24117055
                mark@waltfairpllc.com
                Law Firm of Walt, Fair PLLC.
                1508 North Valley Mills Drive
                Waco, Texas 76710
                Telephone: (254) 772-6400
                Facsimile: (254) 772-6432

                *Counsel for Plaintiff WSOU Investments, LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on March 19, 2021.

                                                   */s/ Ryan S. Loveless*
                                                   Ryan S. Loveless