# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a<br>BRAZOS LICENSING AND<br>DEVELOPMENT,<br><br>   Plaintiff,<br><br>v.<br><br>HUAWEI TECHNOLOGIES USA INC.,<br>*et al.*,<br><br>   Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION No. 6:20-CV-537-ADA<br>CIVIL ACTION No. 6:20-CV-539-ADA |

## DEFENDANTS' SUR-REPLY CLAIM CONSTRUCTION BRIEF

**TABLE OF CONTENTS**

Page

I.   U.S. PATENT NO. 7,860,512 ("THE '512 PATENT") (CASE NO. 6:20-CV-00537 .................................................................................................................. 1

   A.   "capacity" (claims 1-18, 21-24, 27) ....................................................................... 1

II.  U.S. PATENT NO. 8,200,224 ("THE '224 PATENT") (CASE NO. 6:20-CV-00539 .................................................................................................................. 3

   A.   "selecting a first candidate base station …" (claim 1) ........................................... 3

   B.   "executable program means …" (claim 15) .......................................................... 5

- ii -

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Eliyahou Harari et al. v. Roger Le, et al.*,
     656 F.3d 1331 (Fed. Cir. 2011)............................................................................................4

*Function Media, LLC v. Google, Inc.*,
     708 F.3d. 1310 (Fed. Cir. 2013)...........................................................................................5

*Omega Engineering, Inc. v. Raytek Corp.*,
     334 F.3d 1314 (Fed. Cir. 2003)............................................................................................4

*WMS Gaming Inc. v. Int'l Game Tech.*,
     184 F.3d 1339 (Fed. Cir. 1999)............................................................................................5

**TABLE OF PROPOSED CONSTRUCTIONS**

I.       U.S. Patent No. 7,860,512 ("the '512 Patent") (Case No. 6:20-cv-00537)

    A.      "capacity" (claims 1-18, 21-24, 27)

| Huawei's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| "load" | Plain and ordinary meaning |

II.      U.S. Patent No. 8,200,224 ("the '224 Patent") (Case No. 6:20-cv-00539)

    A.      "selecting a first candidate base station using said evaluation of said signal quality from said first measurement report" (claim 1)

| Huawei's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| "selecting a single candidate base station using said evaluation of said signal quality from said first measurement report" | Plain and ordinary meaning |

    B.      "executable program means for causing a base station to perform the method when the program is run on the base station" (claim 15)

| Huawei's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| Subject to 35 U.S.C. § 112, ¶ 6<br><br>Function: causing a base station to perform the method of claim 1 when the program is run on the base station<br><br>Structure: The flow chart of Figure 1, and its accompanying written description, and equivalents thereof | Plain and ordinary meaning; and does not invoke 35 U.S.C. § 112, ¶ 6. If the Court finds the term invokes § 112, ¶ 6, however, then:<br><br>Function: causing a base station to perform the method of claim 1.<br><br>Structure: executable program code configured when executed to cause the base station to perform the method of claim 1; the example flowchart shown in Fig. 1 and its accompanying written description; example signaling described with reference to Figs. 2-4; the example selecting process described with reference to Fig. 5; the base station described with reference to Fig. 6; and equivalents of any of the foregoing |

Defendants Huawei Technologies USA Inc., *et al.*, (collectively, "Huawei") respectfully submit this Sur-Reply Claim Construction Brief to Plaintiff's ("WSOU's") Reply Claim Construction Brief ("Reply") (*See, e.g.*, -00537, Dkt. 46).

**I.      U.S. Patent No. 7,860,512 ("the '512 Patent") (Case No. 6:20-cv-00537)**

   **A.      "capacity" (claims 1-18, 21-24, 27)**

Huawei's proposal should be adopted because the patent applicants acted as their own lexicographers by repeatedly equating "capacity" in the phrases "radio capacity" and "transport capacity" to the term "load" throughout the '512 Patent. WSOU's attempted rebuttals based on the claim language and specification both fail for the reasons set forth below. Specifically, regarding claim differentiation as between claims 1 and 3, WSOU ignores Huawei's clarification in its Responsive Brief by arguing that claim differentiation must be invoked as to the "radio capacity term." Reply at 2. However, such a term does not exist. Instead, claim 1 requires "radio capacity *information*" (a more high-level collective term), not simply "radio capacity." Claim 3 then further provides four examples of "radio capacity information," such as "transport load." Accordingly, the term "transport load" (and the other three examples) in claim 3 are not equal to "*radio capacity information,*" or "*radio load information*" (after applying Huawei's proposal[1]) in claim 1. As such, the doctrine of claim differentiation does not apply between the terms "load" and "capacity." Similarly, the fact that the term "capacity" is recited nine times in claim 1 (*see* Reply at 1, 2) fails to support WSOU's theory, as "capacity" is also recited by claim 3.[2]

---

[1]    Huawei did not "miss[] the point" by applying the proposed construction as alleged by WSOU. Reply at 2. Huawei was simply demonstrating the inapplicability of the doctrine of claim differentiation either with or without applying the proposed construction.

[2]    Notably, WSOU failed to substantively respond to Huawei's clarification in its Responsive Brief on claim differentiation within claim 3 in view of the '512 Patent at 10:6-13. *See* Resp. at 5-6. Huawei previously explained that "maximum radio capacity of the radio cell" and "available radio capacity of the radio cell" serve as a denominator to calculate the "current cell load" status (expressed as a percentage). Therefore, "capacity" in those phrases must mean "load." *See id.*

- 1 -

WSOU further argues that Huawei should not rely on the "crux of the invention" to construe the claim. Reply at 2. However, by referencing the "crux of the invention," Huawei merely highlights the applicants' stated purpose of the '512 Patent among numerous disclosures where the applicants acting as their own lexicographers. *See* Resp. at 2-3. Notably, WSOU fails to cite any additional disclosures in the '512 Patent suggesting that "capacity" should be given any other meaning – as such does not exist in the '512 Patent. Rather, WSOU attempts to rebut Huawei's arguments by taking a quote out of context or making an inference from the wording as discussed below. *See* Reply at 1. But like the situations in numerous cases cited by Huawei (which WSOU failed to distinguish in its Reply), different words may have the same meaning in the context of the entire patent – just like "capacity" and "load" in the '512 Patent. *See* Resp. at 1-2.[3]

Further, WSOU makes an unjustifiable inference from the word "can" in the phrase "the transport capacity can be indicated as the transport load," claiming that the word "can" magically differentiates "capacity" from "load." *See* Reply at 1. However, the entire paragraph of the specification relied on by WSOU (including the sentence above) actually discusses a ***traffic limit*** that can be determined by the transport capacity/load information. *See* '512 Patent, 8:55-67. WSOU fails to answer the most important question – namely, what can "capacity" mean other than "load"? As the answer is "*nothing*," the Court should adopt Huawei's proposed construction.

---

[3]  For example, the paragraph (including 10:3-4 quoted by WSOU) states, "***dynamically adjusting*** the radio capacity information . . . ***when a handover*** or access request arrives, ***based on the transport capacity limit reflecting the transport capacity and load situations*** in the transport network." '512 Patent, 9:65-10:4 (emphasis added). This paragraph echoes the "crux" of the '512 Patent as "mak[ing] it possible for the radio system to take the ***transport load situation*** into account when managing the radio resources of the radio system, ***e.g., when performing handovers***." *Id.,* 4:47-49 (emphasis added).

II.       U.S. Patent No. 8,200,224 ("the '224 Patent") (Case No. 6:20-cv-00539)

   A.       "selecting a first candidate base station …" (claim 1)

In its Reply Brief, WSOU argues that Huawei has failed to show that the claim language and specification support the notion that "selecting a first candidate base station" means "selecting a single candidate base station. *See* Reply at 3. This is false. As Huawei explained in its Responsive Brief, the claim language, the specification, and statements made during prosecution support Huawei's construction as the phrase "a first candidate base station" is consistently used in the singular form, rather than the plural.

WSOU's contention that Huawei is attempting to interpret this phrase differently in different portions of claim 1 is wrong. *See* Reply at 3. The issue WSOU raises regarding the "first measurement report" (*see id.*) is inapposite to the disputed issue here because in that claim limitation, "first" is being used as an indicator of order as opposed to an indicator of quantity. *See* '224 Patent, 9:6-36 ("receiving a ***first*** measurement report" and a "***second*** measurement report" during the second handover preparation) (emphasis added). WSOU's argument may have been relevant if the '224 Patent claimed both a "first" and "second" candidate base station – as opposed to "a first candidate base station" a "set of candidate base stations" and a "plurality of base stations" - but it does not, and WSOU's argument thus misses the mark.

WSOU next attempts to import confusion into the dispute by pointing to the claim language regarding "at least one candidate base station." Reply at 3. WSOU's argument is misleading, however, because that language does not mean that the "first candidate base station" can be more than one base station, only that the first measurement report must contain an evaluation of signal quality from at least one candidate base station. *See* '224 Patent, 9:7-11. The phrase "at least one" modifies the term "candidate base station," communicating to a POSITA that it is possible for the measurement report to contain an evaluation of signal quality from more than one station.

- 3 -

However, when it comes to the disputed phrase "first candidate base station," no such modification language is present. *See generally id.,* 9:1-38. Instead, the claim language is clear that the article "a," with reference to "a first candidate base station," means one and only one.[4]

Finally, WSOU attempts to improperly raise the burden relating to prosecution history disclaimer using words such as "exacting" in an attempt to gloss over the unambiguous statements made by the applicants during prosecution. *See* Reply at 4. There is no case law establishing an "exacting" burden relating to prosecution history disclaimer. Indeed, when it comes to the relevance of statements made during prosecution, Huawei must only show that the statements are unambiguous and that the intent was to disavow claim scope. *See Omega Engineering, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).

Here, that is precisely what the applicants did when distinguishing Kim and clearly stating that "the subject matter of claim 1 attempts an initial handover preparation to a ***single*** selected target base station when a determination is made that a handover is needed, assuming it will be successful, and sends plural handover preparation messages to ***plural*** candidate base stations if the initial handover preparation attempt fails." Resp., Ex 2, at 8 (emphasis added). There is no ambiguity in the applicants' statement, and WSOU points to none. Instead, WSOU argues that the statement should be ignored because it was raised with reference to a claim term other than the term in dispute here. *See* Reply at 4. However, the cases WSOU relies upon are irrelevant to the present situation because the statements made by the applicants are, in fact, directly relevant to the understanding of claim 1 and the claim term at issue – namely, whether the "first candidate base station" is a single station, or more than one station. *See* Resp., Ex. 2, at 6-9.

---

[4]   *See Eliyahou Harari et al. v. Roger Le, et al.*, 656 F.3d 1331, 1341 (Fed. Cir. 2011) ("When the claim language and specification indicate that 'a' means one and only one, it is appropriate to construe it as such even in the context of an open-ended 'comprising' claim.").

B.     **"executable program means …" (claim 15)**

In its Reply Brief, WSOU fails to rebut or even address Huawei's arguments that this term should be construed pursuant to § 112, ¶ 6.[5]  *See* Reply at 5.  Rather, WSOU argues that the "executable program" is sufficient structure because the method steps recited in claim 1 is more detailed than the flow chart of Figure 1.  *See* Reply at 5.  The fact that claim 15 contains more words than Figure 1 is irrelevant to the analysis.  Claim 15 covers an unknown algorithm contained within the "executable program" that is capable of performing the method of claim 1.  Thus, the Court must look to the specification to determine what algorithm is clearly linked to and accomplishes the claimed function.[6]  Yet the only algorithm disclosed in the specification capable of causing a base station to perform the claimed handover method is the algorithm of Figure 1.  *See* '224 Patent, 4:9-61 (describing FIG. 1 and the flowchart 100 of the handover method).

WSOU's newly-identified structure of "an executable program means causing a base station to perform the method of flowchart 100" is confusing and does not identify any corresponding algorithmic structure, but rather identifies (yet again) a generic "executable program."  The claim language itself indicates that this particular means-plus-function term is implemented by computer software and, as such, the corresponding structure must include an algorithm for performing the function.  *See WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1348 (Fed. Cir. 1999).  That algorithm is described pictorially with respect to Figure 1.  Only Huawei's proposed construction includes the proper corresponding algorithm and, as such, it should be adopted by the Court.

---

[5]     Specifically, WSOU fails to rebut Huawei's showing that the inclusion of the term "means" in this term indicates that it is subject to interpretation under 112, ¶ 6, and that the generic language of "executable program" does not connote sufficient structure.  *See* Resp. at 11-13.

[6]     *See Function Media, LLC v. Google, Inc.*, 708 F.3d. 1310, 1318 (Fed. Cir. 2013) (holding that the specification must disclose an algorithm for performing the function in enough detail to explain how the function is performed).

| | |
|---|---|
| Dated:  April 2, 2021 | Respectfully submitted,<br><br>/s/ Jason W. Cook<br>Jason W. Cook<br>Texas Bar No. 24028537<br>Shaun W. Hassett<br>Texas Bar No. 24074372<br>**McGuireWoods LLP**<br>2000 McKinney Avenue, Suite 1400<br>Dallas, TX 75201<br>Telephone: (214) 932-6400<br>jcook@mcguirewoods.com<br>shassett@mcguirewoods.com<br>Tyler T. VanHoutan<br>Texas Bar No. 24033290<br>**McGuireWoods LLP**<br>600 Travis St., Suite 7500<br>Houston, TX 77002<br>Telephone: (713) 571-9191<br>tvanhoutan@mcguirewoods.com<br><br>J. Mark Mann<br>Texas Bar No. 12926150<br>G. Blake Thompson<br>Texas Bar No. 24042033<br>**MANN \| TINDEL \| THOMPSON**<br>300 West Main Street<br>Henderson, Texas 75652<br>Telephone: (903) 657-8540<br>mark@themannfirm.com<br>blake@themannfirm.com<br><br>*Counsel for Defendants Huawei Technologies Co., Ltd., Huawei Technologies USA, Inc., Huawei Device Co. Ltd. (f/k/a Huawei Device (Dongguan) Co.), Huawei Device (Shenzhen) Co., Ltd. (f/k/a Huawei Device Co. Ltd.) and Huawei Device USA* |

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

                                        */s/ Jason W. Cook*
                                        Jason W. Cook